IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH LYNCH,<br>            Plaintiff,<br><br>vs.<br><br>MATTHEWS INTERNATIONAL<br>Successor in Interest to iDL<br>WORLDWIDE, INC.; TIM CIOCCIO,<br>an individual; JOHN MAZOK, an<br>individual; STEVE MILLER, an individual,<br>            Defendants. | Civil Action No. 08-1717<br>Chief Magistrate Judge Amy Reynolds Hay |

## **MEMORANDUM OPINION**

HAY, Chief Magistrate Judge

        Joseph Lynch ("plaintiff" or "Lynch") brings this employment discrimination action against defendants, Matthews International, Successor in Interest to iDL Worldwide, Inc. ("Matthews"), Tom Chiocchio ("Chiocchio"), John Mazock ("Mazock"), and Steve Miller ("Miller") (collectively, "the individual defendants"), alleging that they violated his rights under the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 ("FMLA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the Pennsylvania Human Relations Act, 42 Pa.C.S.A. § 951, *et seq*. ("PHRA"), when his employment was terminated in June of 2007. Because Lynch has either withdrawn or conceded to the dismissal of the majority of his claims and the Court finds that Lynch has failed to produce evidence to demonstrate that a genuine issue of fact exists as to his remaining claims, Defendants' Motion for Summary Judgment will be granted.

A.      **Factual and Procedural Background**

In 1990, prior to his employment with Matthews, Lynch sustained a work related injury to his left foot that continues to cause him a significant amount of pain. Lynch consequently takes a number of pain medications and gets monthly nerve block injections from the pain specialist with whom he treats. Lynch nevertheless assured Matthews when he was hired that his injury would not impede his ability to perform the job and, indeed, there is no evidence that his injury interfered with his work. In fact, Lynch was promoted to a supervisory position in the wood shop within the first three years of his employment.

Although Lynch initially was hired to work the second shift, which enabled him to receive his injections during the day, he was later transferred to another facility that did not have a second shift. Lynch was nevertheless given time off to receive his monthly injections utilizing his vacation time and personal days. Although Lynch was advised by Chiocchio that he may be entitled to family medical leave and directed him to the Human Resource Department where he obtained the requisite FMLA forms, Lynch never requested FMLA leave for those absences. This notwithstanding, Matthews' relevant FMLA Policies require employees to used accrued paid leave for FMLA leave.

Further, according to Matthews, and Lynch has presented no evidence to the contrary, in late 2006 and continuing into early 2007, Matthews decided to reduce, if not completely discontinue, the wood shop operation at the facility where Lynch was employed because of a reduction in customer demand and the fact that the custom cabinetry part of the business was no longer profitable. At the same time, the company implemented overall cost cuts and company-wide staff reductions which included Lynch's termination in June of 2007. Lynch,

2

however, contends that Chiocchio told him that one of the reasons he was terminated was because of his frequent absences. Chiocchio, of course, denies having made that statement.

Lynch filed the instant complaint on December 16, 2008, against defendants bringing claims under the FMLA for interference (Count I) and retaliation (Count II); Title VII (Count III); the ADA (Count IV); and the PHRA (Count V). Defendants filed a motion for summary judgment on January 15, 2010, which is now ripe for review.

### B.  Standard of Review

Summary judgment is warranted only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). See Conoshenti v. Public Service Electric & Gas Company, 364 F.3d 135, 140 (3d Cir. 2004). When the moving party has met this burden, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The mere existence of some evidence favoring the non-moving party, however, will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). See McGreevy v. Stroup, 413 F.3d 359, 363-64 (3d Cir. 2005). In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. Matreale v. New Jersey Dept. of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir.

2007).

   C.   **Discussion**

Because Lynch has either conceded to the dismissal of or has withdrawn all the claims brought against the individual defendants and the retaliation claims brought against Matthews under Title VII and the FMLA, the only claims remaining in the case are those brought against Matthews under the ADA and the PHRA for disability discrimination and under the FMLA for interference.[1]

   1. **Claim for Disability Discrimination under the ADA**

Matthews contends that Lynch's ADA claim is properly dismissed because there is insufficient evidence to establish a *prima facie* case of discrimination and that Lynch is nevertheless unable to demonstrate that its reasons for terminating Lynch's employment are pretextual.

In addressing the allocations of burdens of proof and persuasion in cases arising under the ADA and the PHRA, courts utilize the familiar three-stage shifting burden of proof set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973), and Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248 (1981). See Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 157-58 (3d Cir. 1995). Under this framework, the plaintiff has the initial burden of establishing a

---

[1] Although Lynch has not expressly withdrawn his PHRA claims or conceded to their dismissal, he has failed to address Matthews' arguments regarding those claims at all. Moreover, it is well settled that the PHRA does not provide for the punitive damages Lynch seeks under that statute and that the analysis applicable to claims brought under Title VII also apply to claims under PHRA. See Pollard v. Wawa Food Market, 366 F. Supp. 2d 247, 253-54 (E.D. Pa. 2005); Hoy v. Angelone, 554 Pa. 134, 142, 720 A.2d 745, 749 (1998). Thus, it follows from Lynch's concession that his claim under Title VII is properly dismissed that his claim under the PHRA, insofar as it is based on retaliation for engaging in protected activity, is properly dismissed as well.

*prima facie* case of discrimination. McDonnell Douglas, 411 U.S. at 802. To satisfy a *prima facie* case under the ADA, the plaintiff must show that: (1) he has a "disability," (2) is a qualified individual, and (3) has suffered an adverse employment decision because of his disability. Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001).[2]

Matthews argues that Lynch cannot establish the first prong of the *prima facie* case or that he has a "disability" as defined by the ADA. Under the ADA, an individual is considered disabled if he or she:

> (A) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) has a record of such impairment; or
>
> (C) is regarded as having such impairment.

42 U.S.C. § 12102(2). Lynch has not alleged that he has a record of an impairment that is substantially limiting or that he was regarded by Matthews as having such an impairment, and thus, appears to be proceeding under the first definition.

To succeed under subsection (A), it is not sufficient to merely establish that the plaintiff suffers from an impairment; rather, a plaintiff must "demonstrate that the impairment limits a major life activity" and that the limitation is "substantial." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002). To be substantially limited in a major life activity, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives and "precludes impairments

---

[2] Because the definition of "disability" under the PHRA is substantially similar to that of the ADA and because state courts generally interpret the PHRA in accord with its federal counterparts the Court will treat Lynch's only remaining PHRA claim coextensively with that brought under the ADA. See Kelly v. Drexel University, 94 F.3d 102, 105 (3d Cir. 1996).

that interfere in only a minor way with performance of a major life activity from qualifying as disabilities." Id. at 197.³ Moreover, the term "substantially limits" not only means that the person is completely unable to perform a major life activity but will also be found where the major life activity has been "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform the activity." 29 C.F.R. § 1630.2 (j)(ii). See Deane v. Pocono Medical Center, 142 F.3d 138, 143 n.6 (3d Cir. 1998). To meet this standard, "[t]he impairment must be severe when compared to the functioning of the general population." Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 185 (3d Cir. 1999).

        Here, although not alleged in the complaint, Lynch appears to claim that he is substantially limited in the major life activity of standing, walking and climbing. See Lynch Depo., p. 26 [Dkt. 19-1]. Matthews contends that Lynch's own testimony precludes a finding that he is substantially limited in these major life activities. Specifically, Matthews points to Lynch's deposition testimony in which he attested to the fact that he is able to stand for three to four hours at a time without taking a break, and that while on the Hollister Project he could sometimes "be standing for twelve to thirteen to fifteen hours . . . ." Lynch Depo., pp. 26-28 [Dkt. 19-1]. Lynch also testified that although he "never really went on any kind of long walks" he is sure that if he "walked for quite sometime" it would aggravate his physical problems. Id. at p. 29-31. He also acknowledged that as the project manager he "was constantly running around" and that he never requested an accommodation for either his standing or walking limitations and

---

³"Major life activities" include, but are not limited to, "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working," as well as "sitting, standing, lifting [and] reaching." 29 C.F.R. § 1630.2(I); 29 C.F.R. pt. 1630 app. § 1630.2(I). See Deane v. Pocono Medical Center, 142 F.3d 138, 144 n.7 (3d Cir. 1998).

that, as the Hollister project manager, he could tailor his work activities so that he could sit and stand when he needed to. Id. at pp. 29, 30, 31, 32. With respect to climbing, Lynch testified that it is "difficult" to climb a ladder and that, when he had to do so, he "just asked one of the guys to do it" for him which he could do as the project manager. Id. at pp. 31-32.[4]

While it cannot be disputed that Lynch has an impairment, this evidence, in the Court's view, is insufficient to allow a reasonable juror to conclude that Lynch is substantially limited in his ability to stand, walk, sit or climb as compared to individuals in the general population. Indeed, the evidence establishes that Lynch apparently has little to no difficulty standing for long periods of time and only that it is "difficult" for him to climb and to walk for an unspecified period of time.

Nor has Lynch pointed to any evidence that would support a contrary conclusion. Moreover, Lynch appears to concede that the evidence cited by Matthews demonstrates that he is able to perform activities of daily living as his only response to Matthews' argument in this regard is that he takes Oxycontin twice a day, morphine three times a day and ibuprofen on an as need basis, and that he utilizes a TENS unit and has monthly pain injections. Pl. Brief., p. 5 [Dkt. 24]. Lynch then simply concludes that without these medications and the TENS unit, "he

---

[4]Although not argued by Matthews, some courts have found that climbing is not of central importance to most peoples' daily life and, hence, is not properly considered a major life activity at all. See e.g., Robinson v. Global Marine Drilling Co., 101 F.3d 35, 37 (5th Cir. 1996) (climbing stairs is not "a major life activity under the ADA" and thus plaintiff limited in this way was not disabled); Piascyk v. City of New Haven Police Department, 64 F. Supp. 2d 19, 26 (D. Conn.1999), aff'd, 216 F.3d 1072 (2d Cir. 2000) (running, jumping, climbing stairs and ladders, and crawling were not "sufficiently significant" or "essential functions" to qualify as major life activities under the ADA); Rogers v. City of N.Y., Housing, Preservation & Dev., 2008 WL 2937801 at *1 (S.D.N.Y. July 30, 2008), aff'd, 359 Fed. Appx. 201 (2d Cir. 2009) (plaintiff with climbing limitations was not disabled); Bailey v. Charlotte-Mecklenburg Bd. of Educ., 2001 WL 1019736 at *8 (W.D.N.C. April 3, 2001) (ladder climbing is not a major life activity).

would have significant difficulty in performing most activities of daily living . . . ." Id. The implication, of course, is that *with* the medication, he does not have significant difficulty in performing activities of daily living as is apparent from the evidenced cited by Matthews.

In 1999, however, the Supreme Court of the United States held that under the ADA, where "it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures-both positive and negative-must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." Sutton v. United Airlines, Inc., 527 U.S. 471, 482 (1999).[5] Because, by his own admission, Lynch's impairment is controlled with medication, under Sutton, he cannot show that a major life activity has been substantially limited. It therefore follows that Lynch is unable to demonstrate that he suffers from a disability as defined under the ADA and, thus, is unable to establish a *prima facie* case of discrimination. As such, Matthews' motion will be granted as to Lynch's ADA claim brought at Count IV of the complaint.

### 2. Claim for Interference under the FMLA

The FMLA ensures that employees may take up to twelve weeks of unpaid leave

---

[5]Although Congress broadened the definition of disability and abrogated Sutton when it enacted the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-35, 122 Stat. 3553 (2008), the ADAAA did not become effective until January 1, 2009, after the alleged discriminatory conduct at issue in this case. Finding that application of the ADAAA to conduct occurring before January of 2009, "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed," see Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994), courts have declined to apply the ADAAA retroactively. See EEOC v. Agro Distrib., LLC, 555 F.3d 462, 469 n.8 (5th Cir. 2009); Fikes v. Wal-Mart, Inc., 322 Fed. Appx. 882, 883 n.1 (11th Cir. 2009); Kiesewetter v. Caterpillar Inc., 295 Fed. Appx. 850, 851 (7th Cir. 2008); Hajel v. Ludlum, 2010 WL 2103923 at *2 (W.D. Pa. May 25, 2010); Garvin v. Progressive Cas. Ins. Co., 2010 WL 1948593 at *4 (E.D. Pa. May 10, 2010); Erbe v. Potter, 2010 WL 1052947 at *7 n.3 (M.D. Pa. Mar. 22, 2010); Parker v. Midwest Air Traffic Control, 2009 WL 1357238 at *4 (W.D. Pa. May 12, 2009). Lynch has not argued otherwise and, thus, the law prior to the enactment of the ADAPA, including Sutton, applies here.

due to, among other things, serious medical conditions, 29 U.S.C. § 2612(a)(1)(D), and renders it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). See Sommer v. The Vanguard Group, 461 F.3d 397, 399 (3d Cir. 2006). To state a claim for interference under the FMLA, a plaintiff must show that: (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA. Johnson v. Community College of Allegheny County, 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008).

In the instant case, Matthews contends that Lynch is unable to establish the fourth and fifth prongs, arguing that Lynch never gave notice of his intention to take FMLA leave and that he was never denied FMLA leave. Matthews relies on the Declaration of Tim Chiocchio, the Director of Operations at Matthews' East Butler facility, in which he attests to the fact that the first time the subject of FMLA leave came up was when Lynch requested a vacation day so that he could attend a funeral and Chiocchio advised him that he had no vacation, sick or personal time left to use. When Lynch took exception to that, explaining that the reason he didn't have any time left was that he had been required to use them to go to doctor's appointments, it was Chiocchio who raised the issue of FMLA leave and advised Lynch to contact the Human Resource Department and inquire whether he was entitled to take FMLA leave. Def. Exh. 2: Chiocchio Decl. ¶¶ 33-35 [Dkt. 19-2]. The evidence also shows that on May 2, 2007, Lynch was sent the forms necessary to apply for FMLA leave and was advised at the

9

time that, once the necessary documentation was received, any time off he had taken that qualified as family medical leave would be excused. Def. Exh. 1: Lynch Depo., pp. 138-39; Def. Exh. 6: 5/2/2007 Cover Letter & FMLA forms [Dkt. 19-3]. Although Lynch alleges in the Complaint that his rights under the FMLA were interfered with because he was denied the opportunity to utilize FMLA leave for his absences on March 1 and 2, 2007, and May, 8, 9 and 18, 2007, he readily concedes that he never requested FMLA leave for those days or any others. Lynch Depo., pp. 146-47. See Complaint ¶¶ 42-44.

Moreover, it is also undisputed that Lynch was never denied time off for treatment at the pain clinic, including March 1 and 2, 2007, and May 8, 9, and 18, 2007, and was never disciplined for having done so. Richard Antolic, the plant manager and the person who approved Lynch's days off, testified that he had no problem with Lynch taking time off for his appointments and that there were no repercussions for his having done so even after the a slightly stricter attendance policy went into effect. Def. Exh. 8: Antolic Depo., pp. 12, 15, 16, 18 22, 25-26, 28-29, 33, 52-53; Lynch Depo., p. 147. Although Lynch was required to use vacation days for these absences under Matthews' FMLA policies, that requirement does not run afoul of the FMLA which expressly provides that "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee ...." 29 U.S.C. § 2612 (d)(2)(B). See Def. Exhs. 4, 5: Matthews' FMLA Policies. Thus, notwithstanding the fact that Lynch never requested FMLA leave and Matthews did not designate the time he took off for medical treatment as FMLA leave, he nevertheless received all the time off he needed to attend to his medical needs without any interference by or repercussions from Matthews. Under these circumstances, it is difficult to see

how Lynch was denied any benefits he was entitled to under the FMLA and precludes a finding that Matthews interfered with those rights.

Indeed, Lynch does not argue that he was denied time off for his appointments or even that he was discouraged from doing so, but responds to Matthews' arguments by merely concluding that "[t]he only genuine issue with respect to this claim is the nature of Mr. Lynch's damages." Pl. Brief, p. 7 [Dkt. 24]. Because Lynch has failed to rebut Matthews' arguments or set forth any evidence that would establish that he gave notice of his intent to take FMLA leave or that he was denied time off, discouraged from taking time off or disciplined for having done so, no reasonable jury could conclude that Matthews interfered with, restrained, or denied Lynch any right under the FMLA. See Mascioli v. Arby's Restaurant Group, Inc., 610 F. Supp. 2d 419, 429 (W.D. Pa. 2009), quoting Alifano v. Merck & Co. Inc., 175 F. Supp. 2d 792, 794 (E.D. Pa. 2001) ("Courts have refused to recognize a valid claim for interference in the absence of any injury"). See also Hilborn v. Cordaro, 2007 WL 2903453 at *7-*8 (M.D. Pa. Sept. 28, 2007) (Dismissing interference claim where the plaintiff failed to alleged that he was denied leave or that he was discouraged from taking FMLA leave). As such, Matthews is entitled to summary judgment on Lynch's remaining FMLA claim as well.[6]

---

[6] The Court also notes that Lynch appears to have abandoned any claim that Matthews interfered with his FMLA rights by allegedly denying him a promotion as his brief is devoid of any mention of a lost promotion. Moreover, to the extent Lynch has argued that Matthews interfered with his FMLA rights when it terminated his employment, that claim is properly treated under the FMLA as a retaliation claim which Lynch has withdrawn. See Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 146-48 (3d Cir. 2004); Mascioli v. Arby's Restaurant Group, Inc., 610 F. Supp. 2d at 430-433.

### D. Conclusion

For the reasons set forth above, the Defendants' Motion for Summary Judgment [Dkt. 17] will be granted.

An appropriate Order follows.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
Chief United States Magistrate Judge

Dated: 28 June, 2010

cc: All Counsel of Record via CM/EFC